RODGERS, Justice:
This case is before this Court on appeal by S. Norris Broadhead and Paul E. Broadhead, Co-Executors and Co-Trustees of the Estate of Sam Broadhead, Deceased, and on a cross-appeal by J. E. Stack, Jr., from a decree of the Chancery Court of Jefferson Davis County, Mississippi. The chancellor’s decree affirmed in part and overturned in part a report of a Special Master in Chancery.
Broadhead and Stack were engaged in the oil business as joint venturers. Stack was the field man in the operation and Broadhead was responsible for the office work, including bookkeeping and handling of funds. The parties would, on an intermittent and irregular basis, attempt to settle their expense accounts.
This cause of action began because of the execution of a promissory note and deed of trust by J. E. Stack, Jr., complainant, to Sam Broadhead, defendant, in the approximate sum of $90,098.81. The defendant, Broadhead, through the trustee, E. L. Snow, attempted to foreclose • said deed of trust upon the failure of the complainant to pay the same. Whereupon, the complainant, on or about the 6th day of March, 1964, filed a bill of complaint asking for the issuance of a temporary prohibitive injunction against the defendants, Broadhead and Snow, and further asking that a full and complete accounting be required between the parties. The deed of trust was made an exhibit to the bill of complaint. A hearing was held on March 11, 1964, before the chancellor, and the cause was dismissed. On March 13, 1964, the case was reinstated. On March 13, 1964, a temporary injunction was issued by a member of this Court with the return date as to same being set for the fourth Monday of May, 1964, before the chancellor. A motion was then filed by the defendants for a hearing to dissolve the tern-porary injunction issued by the Supreme Court Justice and a hearing was set for March 24, 1964. A hearing was held on the 24th and 25th of March, 1964, as to the motion to dissolve and upon hearing the same, the chancellor declined to dissolve the injunction by decree dated March 25, 1964.
On June 2, 4, and 5, a hearing was held before the chancellor as to the question of an accounting between the parties. On June 12, 1964, and by amendment dated June 19, 1964, the chancellor ordered an accounting between Stack and Broadhead and a master was then appointed by the chancellor.
On or about August 10, 1964, Broadhead filed his accounting. Stack filed his accounting on or about October 17, 1964. On or about November 23, 1964, Broad-head filed his exceptions to the accounting of Stack.
A hearing was held before the master on several occasions wherein testimony as to the accountings was taken in behalf of Stack and Broadhead. A stipulation was entered before the master to the effect that the testimony heard by the chancellor was properly before the master for consideration as evidence in his determination of the final accounting between the litigants, and that all the accountings were likewise properly before the master. On October 31, 1966, a similar stipulation was made to the effe'ct that the evidence by the transcript of the first, second and third hearings of this matter be considered as evidence by the master, meaning all of the hearings where testimony was taken, and that no other witnesses be brought before the master other than the auditors or accountants for the respective parties.
As a result of the accountings rendered by both parties, some twenty items designated as disputed items A through T were in dispute. However, there were numerous items which were undisputed between the parties, and these undisputed items total as follows: (1) undisputed amount which *384 Stack admits he owes Broadhead — $134,-866.92; (2) undisputed amount which Broadhead admits he owes Stack — $95,320.-44. Some of the items detailed in the decree of the chancery court are not contested by the parties on this appeal.
The master in chancery made a detailed finding of fact as to the various items of accounting and determined that J. E. Stack, Jr., was indebted to the estate of Sam Broadhead (Mr, Broadhead died during the trial) in the sum of $84,104.03 before interest was calculated. Objections were submitted to the master in chancery by both sides. The report of the master was given to the chancellor who proceeded to review the account struck by the master. He sustained and agreed with the findings of the master on thirteen items. He modified the amount allowed in one item and allowed six items as claims disallowed by the master in his report. The chancellor, after having determined the amount due each party from the other, struck a balance shown to be due to the Broadhead estate from J. E. Stack, Jr., including interest up to January 14, 1970, in the sum of $94,186.-91.
The preliminary issue confronting this Court in the instant case is whether or not the chancellor committed reversible error in setting aside the report of the master in chancery without deciding that the supporting facts show that the report of the master was manifestly wrong.
In the case of Merchants Fertilizer & Phosphate Co. v. Standard Cotton Gin, 199 Miss. 201, 23 So.2d 906 (1945), this Court said:
The law of this State, through the years, has uniformly been that the report of a master in chancery has the effect of the verdict of a jury in the circuit court, and the chancellor could not vacate or set it aside, unless manifestly wrong as against the overhelming weight of the evidence. Hines v. Imperial Naval Store Company, 101 Miss. 802, 58 So. 650; Daniel v. Klein, 149 Miss. 135, 115 So. 193; Sadler v. Glenn, 190 Miss. 112, 119, 199 So. 305; Goodyear Yellow Pine Company et al. v. Anderson, 171 Miss. 530, 536, 157 So. 700. (199 Miss, at 207, 23 So.2d at 907)
See also State Highway Commission v. Wunderlich, 10 So.2d 453 (Miss. 1942).
We held in Hines v. Imperial Naval Store Co., 101 Miss. 802, 58 So. 650 (1911), that the finding of a master in chancery on conflicting evidence is entitled to the same weight as the verdict of a jury. There is, however, much authority to the contrary (see 30A C.J.S. Equity § 543b(2) [1965]); nevertheless, the report of the master is required to be submitted to the chancery court for confirmation. The chancellor may confirm, modify, reject, reverse or recommit all or a portion of the master’s report, just as a trial judge may set aside the verdict of a jury and enter a judgment notwithstanding the jury verdict.
The report of the master in chancery has no efficacy until it is confirmed by the chancery court. The very purpose of appointing a master in chancery is to aid the court and, although many reasons given by the courts for the need of masters in chancery have been corrected or have vanished, the need for masters in chancery is still essential in determining the facts in a complicated account. Griffith, Mississippi Chancery Practice, 2nd Ed. § 598 (1950).
The report of the master on facts revealed from evidence taken before him is given great weight by the chancellor in determining the case presented for his decision. The master’s decision is necessarily based upon involved accounts, credits, adjustments, values and interest, all of which must be added or subtracted, as the case may be, in order to strike a balance.
We pointed out in Merchants Fertilizer & Phosphate Co. v. Standard Cotton Gin, supra, that the master saw and heard the witnesses testify before him and that he was in a better position to appraise the credibility and weight of the testimony *385 than the chancellor who had to depend upon the mere letter of the written transcript.
This reason for sustaining the finding of the master in chancery over the finding of the chancellor does not hold true in this case because the chancellor heard all of the evidence except the testimony of the auditors and was in a better position to see, hear and understand the testimony as to the claims for the various items than was the master who read the testimony presented to the chancellor.
We are convinced from this record that the chancellor acted properly in determining the validity of the items of claim given in evidence before him. Moreover, a reading of the testimony convinces us that he was correct in his decision.
This, then, brings us to the examination of the various items of debit and credit shown in the master’s report and the final decree of the chancery court. A careful review of each item has convinced us that the final decree allowing and disallowing the various accounts is correct and should be sustained by this Court.
There are, however, three items of dispute that should perhaps be discussed in detail. It is contended by the trustees of the Broadhead estate that the note and trust deed in the amount of $90,098.81 given to Broadhead by Stack, the foreclosure of which precipitated this litigation, was in fact an “account stated” and was an admission of an indebtedness in that sum. The trouble with this contention is that the parties admitted various items of indebtedness not shown in the note. Moreover, the testimony of the bookkeeper and the principal parties indicated an astonishing method of “on the cuff” bookkeeping which necessitated a full-blown accounting of the items of credit and indebtedness between the joint venturers. See Federal Land Bank of New Orleans v. Brumfield, 185 Miss. 487, 187 So. 552 (1939); 1 C.J.S. Account Stated § 57 (1936).
The appellants, Broadhead trustees, contend that Stack is indebted to the estate of Sam Broadhead for the balance due on the purchase price of certain trucks and oil rigs sold to Broadhead by Stack for $8,000. The chancellor held that Stack simply sold to Broadhead his interest in the property which had been purchased by Broadhead and an interest in which was being sold to Stack. We think this was a question of fact and we agree that the finding of the chancellor is correct.
Mr. Stack complains on cross-appeal that the chancellor was in error in the assessment of interest under the circumstances shown in this case. It seems to us, however, that the holding of this court in Rubel v. Rubel, 221 Miss. 848, 75 So.2d 59 (1954), is controlling in the instant case. We said in that case:
^ h= * [T]he rule seems to be well-settled that where the amount of the demand is sufficiently certain to justify the allowance of interest thereon, the existence of a setoff, counterclaim or cross-claim which is unliquidated will not prevent the recovery of interest on the balance of the demand found due from the time it became due. 47 C.J.S. Interest § 19b, page 31. (221 Miss, at 873, 75 So.2d at 69)
We also think that the issue as to whether or not the $15,000 note marked paid was a part of a larger note for $21,-000 (not found) was a question of fact for the determination of the court. The master in chancery and the chancellor disallowed this claim, and in view of other evidence in the record, we hold that this item was properly allowed the Sam Broadhead estate as a claim against J. E. Stack, Jr.
Now having considered all the matters presented by appeal and cross-appeal in this case, we hold that the judgment and decree of the chancery court should be, and is hereby, affirmed, together with legal interest from and after January 14, 1970. The cost of appeal to this Court is *386 divided equally between the estate of Sam Broadhead and J. E. Stack, Jr.
Affirmed.
ETHRIDGE, C. J., and JONES, BRADY and SMITH, JJ., concur.